# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MUNCHKIN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  18 C 6337 |
| | ) |
| TOMY INTERNATIONAL, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

The Court is tasked with the construction of disputed claim terms in United States Patent Number 9,888,796 (the "'796 Patent"). Having reviewed the written submissions and heard arguments, the Court construes the disputed terms as follows.

## BACKGROUND

Plaintiff Munchkin owns several patents related to non-spill drinking containers. The '796 Patent includes claims directed at a non-spill container having a collar and seal assembly from which drinking can occur anywhere along the collar. Under the '796 Patent, Munchkin has sold its Miracle 360 Cups, a line of children's sippy cups, since 2014. Munchkin alleges that Defendant TOMY has infringed upon the '796 Patent in the design of TOMY's Simply Spoutless Cup, which it has sold since 2015.

The parties have identified six disputed terms in the '796 Patent.[1] The six terms are contained in claims 1, 5, 9, and 15 of the '796 Patent. These claims cover, with the disputed language noted:

> 1. A non-spill collar and seal assembly, comprising: a collar comprising: *an open upper end* proximate to and including an upper end of a sidewall, an upper perimeter, and a rim; *a closed lower end* having *a projection extending upward therefrom* and one or more passages disposed through the closed lower end to channel a fluid; the sidewall having a tapered shape that extends from the open upper end inward toward the closed lower end, and *a support surface provided along an inner surface of the sidewall adjacent to the open upper end* having one or more protrusions disposed radially adjacent to the support surface defining one or more channels; and *a fastener assembly provided on an external wall of the collar*; and a seal having a surface substantially similar to a shape of the open upper end, the seal having an aperture for receiving and securing the projection therein.
>
> 5. A non-spill collar and seal assembly, comprising: a collar comprising: *an open upper end*; *a closed lower end* having *a projection extending outward therefrom* and one or more passages disposed through the closed lower end; an internal wall having a frustoconical shape that extends from the open upper end to the closed lower end, and an inner surface of the internal wall adjacent to the open upper end having one or more protrusions disposed radially defining one or more channels; *a fastener assembly provided opposite the internal wall*; and a seal having an aperture for receiving and securing the projection therein and a seal perimeter substantially similar to a collar perimeter of the open upper end that creates a leakproof seal with the open upper end of the collar.
>
> 9. A non-spill collar and seal assembly, comprising: a collar comprising: *an open upper end*; *a closed lower end* having *a projection extending outward therefrom* and one or more passages disposed through the closed lower end to channel a fluid; an internal wall having a frustoconical shape that extends from the open upper end to the closed lower end, and *a support surface provided along an inner surface of the internal wall adjacent to the open upper end* having one or more protrusions disposed

---

[1] The Parties originally identified and briefed seven terms but reached an agreement about the construction of the seventh term prior to the *Markman* hearing. Accordingly, this Opinion does not construe Term 7.

radially adjacent to the support surface defining one or more channels; and *a fastener assembly provided opposite the internal wall*; and a seal having an aperture for receiving and securing the projection therein and having a shape substantially similar to an inner surface of the internal wall that creates a leakproof seal with the inner surface of the internal wall.

15. A non-spill collar and seal assembly, comprising: a collar comprising: *an open upper end*; *a closed lower end* having one or more passages disposed through the closed lower end to channel a fluid and a projection extending outward from the closed lower end, the projection having at least one shoulder; an internal wall having a frustoconical shape that extends from the open upper end to the closed lower end, and *a support surface provided along an inner surface of the internal wall adjacent to the open upper end* having one or more protrusions disposed radially adjacent to the support surface defining one or more channels; and *a fastener assembly provided opposite the internal wall*; and a seal having a surface substantially similar to a shape of the open upper end and having an aperture, the aperture having at least one flange that is engaged and locked to the shoulder on the projection therein.

'796 Patent, Claims 1, 5, 9, 15 (emphasis added); Dkt. # 1-1, pg. 33–34.

The Court conducted a *Markman* hearing where each party was allowed to explain its proposed construction of the disputed terms and answer questions from the Court concerning their respective positions. Neither party called any witnesses nor provided any extrinsic evidence at the hearing, though TOMY offered a declaration of a purported expert as part of its briefing.

## **LEGAL STANDARD**

The construction of a patent claim, "including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). In general, claim terms are given the meaning they would have to a person having ordinary skill in the art at the time of the patent's effective

3

filing date. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). To determine what a person having ordinary skill in the art would understand a term to mean, the Court first considers the intrinsic evidence, which includes claim language, the patent's specification, and the patent's prosecution history. *See Unique Concepts v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991). The intrinsic evidence forms the public record of what the patentee claimed, and the public is entitled to rely on this record to determine a patent's scope. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

When considering the intrinsic evidence, the Court first looks at the language of the claim or claims in which the term appears. *Phillips*, 415 F.3d at 1314. Claim language supplies information about the meaning of a term through the context and relationship to other claims. *Id.* And because terms are usually used consistently, a term in one claim of the patent can provide insight into its meaning when used elsewhere. *Id.*

Next, the Court looks at the specification, which clarifies the claim language. *Id.* at 1315. "The terms must be read in view of the specification, of which they are a part" because "they are part of a fully integrated written instrument." *Id.* (cleaned up). The specification, therefore, is both highly relevant to and often dispositive of a term's meaning. *Id.* However, the specification is not without pitfalls—limitations found within it cannot be read into claims that do not contain the same limitations. *See Golight, Inc. v. Wal-Mart Stores,* 355 F.3d 1327, 1331 (Fed. Cir. 2004).

Finally, the Court looks at the patent's prosecution history. A patentee can act as a lexicographer, but he or she must do so in the written description or prosecution history with "reasonable clarity, deliberateness, and precision." *Id*. at 1332. The prosecution history can clarify a term's definition and must be consulted to determine whether the patentee gave a special meaning to a term or disclaimed aspects of the invention. *See generally id*. at 1331–33.

If there remain ambiguities after considering the intrinsic evidence, the Court may look to extrinsic evidence. *See Phillips*, 415 F.3d at 1317. Extrinsic evidence includes dictionaries, learned treatises, and expert and inventor testimony. *Id.* The Court may also consider extrinsic evidence, especially technical dictionaries, if the Court finds it useful to understand technical terms of art. *Id.* However, extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (cleaned up). Additionally, extrinsic evidence cannot contradict claim language that is unambiguous from the intrinsic evidence. *Id*. at 1324. With these principles in mind, we now examine the disputed terms.

## DISCUSSION

Munchkin and TOMY have identified six disputed terms. We address each in turn.

I.     Terms 1 & 2: "an open upper end" and "a closed lower end"

The first two disputed terms, "an open upper end" and "a closed lower end," are related. The parties specifically dispute the meaning of the word "end" in these two phrases. We address each of their proposed constructions in turn.

a. TOMY's Proposed Construction

TOMY contends that "an open upper end" means "the uppermost, terminal portion of the collar having an opening through the uppermost, terminal portion." Similarly, TOMY says that "a closed lower end" means "the lowermost, terminal portion of the collar enclosed such that no opening exists through the lowermost, terminal portion."

In support, TOMY argues that "an open upper end" and "a closed lower end" must be the uppermost and lowermost terminal portions because Claim 1 describes a "sidewall . . . that extends from the open upper end inward toward the closed lower end." *Id.* at 7–8. And if an "an open upper end" and "a closed lower end" were not construed as terminal points, Claim 1's description would be meaningless. *Id.* at 8. TOMY also argues that the "open upper end" must be the uppermost, terminal portion because it includes a rim. *Id.*

In response to Munchkin's proposed construction, TOMY argues that Munchkin imposes a negative limitation in its construction, which requires "express intent to confer on the claim language the novel meaning imparted by the negative limitation." Dkt. # 32, at 5 (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir.

6

2003)). TOMY concludes that both the intrinsic and extrinsic evidence does not support Munchkin's construction. *Id.* at 5–14. TOMY says that the term "end" was not clearly redefined because the specification uses the term inconsistently. *Id.* TOMY interprets the specification as sometimes using "end" to mean the terminal point of an object while also using "end" to mean "something more amorphous and poorly defined." *Id.*

Finally, TOMY offers extrinsic evidence to support its arguments. TOMY first points to a dictionary definition of "end" from Webster's Ninth New College Dictionary and Oxford's online thesaurus, which define the term as "a point that marks the end of something" or "the extreme or last part lengthwise." *Id.* at 11. Additionally, TOMY offers the declaration of a purported expert, Mr. Darley, who opines that a PHOSITA would define the terms exactly as TOMY proposes. *Id.* at 11–12; Darley Decl., Dkt. # 33.

### b. Munchkin's Proposed Construction

Munchkin contends that "an open upper end" and "a closed lower end" should be construed with their plain and ordinary meaning, which does not require these terms to be the uppermost and lowermost terminal portions of the collar. Dkt. # 41.

Munchkin argues that the specification supports this construction and refutes TOMY's construction. *Id.* at 11. For example, Munchkin says that Figure 8 of the specification, included below, shows that the "closed lower end" is the internal structure of the collar, which corresponds to its construction. *Id.* at 11-12. And the specification

7

does not require the "closed lower end" to be the "lowermost, terminal portion of the collar." *Id.* at 4.



FIG. 8

Lastly, Munchkin argues that both TOMY's extrinsic evidence and TOMY's argument that Munchkin acted as its own lexicographer with a negative limitation are improper. *Id.* at 15–17. Munchkin argues that it not trying to act as a lexicographer because it construes the terms with their plain and ordinary meaning. *Id.* at 16. Munchkin also disagrees that it uses a negative limitation. *Id.* Rather, it only specified that the plain and ordinary meaning does not *require* "a closed lower end" to be the "lowermost, terminal portion." *Id.* Munchkin thus says that the claim language should not be substituted with dictionary definitions or a definition offered by an expert. *Id.* at 15.

### c. The Court's Conclusion

We believe that the claim language and specification clearly support Munchkin's construction, i.e. the plain and ordinary meaning. Neither "closed lower end" nor "open

8

upper end" are technical terms or terms of art. Specifically, "end" is a common term with a widely accepted meaning.

The plain and ordinary meaning of "end" does not support TOMY's construction. At the hearing and in the briefs, the parties point to the end of a movie or end of a book as examples of an "end." These commonsense examples illustrate the plain meaning well. The end of a novel is more than just the final period of the final sentence and the end of a movie is more than the final frame. Rather, it is the denouement of the story arc, which may span a few sentences, pages, chapters, or scenes. Without anything in the patent indicating that the "closed lower end" or "open upper end" means a specific terminal point, we must read the terms in accordance with their plain and ordinary meaning. The inventor uses the word "end" to point to an area of the collar, not the uppermost or lowermost terminal point of the collar.

The specification further elucidates this. Although the specification does not define the terminal portions of the collar, the example embodiments show that the "closed lower end" is not required to be the lowermost, terminal portion. For example, in Figure 18, shown below, both the external walls of the seal and the handles of the collar extend past the closed lower end, and thus the "closed lower end" is not the lowermost, terminal portion of the collar. Because the specification shows that "a closed lower end" is not required to be the lowermost, terminal portion, the "end" in "an open upper end" is also not constrained to the uppermost, terminal portion.



TOMY's proposed construction is unsupported by the claim language and the specification. TOMY's construction adds limitations and narrows the claim terms. The claim language and the specification do not contain any requirement that the "open upper end" must be the uppermost terminal point, or that the "closed lower end" must be the lowermost terminal point. In fact, the plain language and the specification show the exact opposite.

At the hearing, TOMY attempted to argue that a part of Figure 8 supports its contention that "end" means the terminal point. The specification reads: "The *lower end 23* of the collar 20 defines the *lower cylindrical wall* with a smaller diameter *having male threads 24 disposed on an outer surface thereof*." Dkt. #34-2, 5:10–12 (emphasis added). TOMY focuses on the "lower end 23" and "lower cylindrical wall" language of the specification, coupled with its belief that the line identifying "23" points to the bottom of the wall. But TOMY overlooks the full language of the specification: that

10

the "lower end" has male threads on its outer surface. Looking at Figure 8, one can clearly see that the male threads are on more than just the lowest terminal point of the wall. Thus, this shows that "end," in accordance with its plain meaning, is not the lowermost terminal point, but an area.

Finally, we do not consider Darley's declaration for two reasons. First, since the intrinsic evidence gives clear meaning to the terms, we need not consider his definitions because "a court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history." *Id.* (cleaned up). Second, even if the intrinsic evidence was not clear, Darley offers a conclusory opinion about how the definition of the terms with little reasoning and scant support. And "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Phillips*, 415 F.3d at 1318. We therefore do not consider any extrinsic evidence.

Accordingly, "closed lower end" and "open upper end" as used in the '796 Patent have their plain and ordinary meaning, which does not require them to be the lowermost or uppermost terminal points.

**II.    Terms 3 and 5: "a fastener assembly provided on an external wall of the collar" and "a fastener assembly provided opposite the internal wall"**

Terms 3 – "a fastener assembly provided on an external wall of the collar" – and Term 5 – "a fastener assembly provided opposite the internal wall" – are also related.

11

The dispute hinges on the meaning of "end" in Terms 1 and 2. We address the parties' positions in turn.

### a. TOMY's Proposed Construction

TOMY argues that these terms should be construed as "a fastener assembly provided on an external wall formed between the open upper end and closed lower end" and "a fastener assembly provided on a wall opposite the internal wall and formed between the open upper end and closed lower end." TOMY says that the fasteners must fall between the "open upper end" and the "closed lower end" because the two ends are the uppermost and lowermost terminal points. Dkt. #32 at 15–17. In other words, the "open upper end" and the "closed lower end" are two opposite, terminal points, so all other components must fall between the two terminal points. TOMY contends that the specification shows that the fastener assembly is positioned above the lower end of the collar and below the upper end of the collar. *Id.* at 16.

### b. Munchkin's Proposed Construction

Munchkin argues that this term should be given its plain and ordinary meaning. Dkt. #41 at 20, 23. Munchkins argues that TOMY's construction of Term 3 and Term 5 is dependent on TOMY's construction of terms 1 and 2. *Id.* at 10. And, therefore, if the Court does not adopt TOMY's construction of Terms 1 and 2, the Court cannot adopt TOMY's construction of Terms 3 and 5. *Id.* at 20, 23. Moreover, Munchkin says that TOMY's construction of these terms ignores the "lower end" of the collar. *Id.* at 20.

### c. The Court's Conclusion

We agree with Munchkin that these terms must be given their plain and ordinary meaning. Initially, the Court has rejected TOMY's contention that the "open upper end" and "closed lower end" are the terminal points of the collar. The primary logic behind TOMY's argument here thus fails. Additionally, the patent's embodiments contradict TOMY's construction. Figure 8 shows that the fastener assembly is at least partially on the same plane as the "closed lower end." And Figure 18 shows the fasteners extend lower than the "closed lower end." There is nothing in the claim language or specification that requires the fastener assemblies to be formed between the "closed lower end" and "open upper end."

Accordingly, we give the terms their plain an ordinary meaning, which does not require the fasteners to be formed between the "open upper end" and "closed lower end."

### III. Term 4: "a projection extending outward therefrom"

The next disputed term is "a projection extending outward therefrom." The parties specifically dispute the meaning of the word "outward." We address the parties' arguments in turn.

### a. TOMY's Proposed Construction

TOMY argues that this term should be construed as "a projection that flares laterally away from the furthest extension point of the closer lower end." Dkt. #32 at 17. TOMY bases this construction on claim differentiation. *Id.* In Claim 1, the patent

13

describes the projection as "extending upward" from the closed lower end, while the patent describes a projection as extending "outward" in Claims 5, 9, and 15. *Id.* at 17–18. The specification also uses the term "outward" to describe a direction perpendicular from an upward extending direction, namely in a lateral direction. *Id.* Thus, because the terms are different, TOMY argues that the patentee intended to claim different scopes. *Id.* at 17.

### b. Munchkin's Proposed Construction

Munchkin argues that the term should be given its plain and ordinary meaning and refutes TOMY's claim differentiation argument. Dkt. # 41 at 21–23. Although the patentee used different terms, it argues that claim differentiation only applies to claims that are otherwise identical in scope. *Id.* at 22. But here, Claim 1 and Claims 5, 9, and 15 are different in scope, so outward and upward are not required to have different meanings. *Id.* Munchkin also argues that TOMY's construction would introduce a feature that the patent never contemplated because the patent repeatedly discloses a projection that extends upward. *Id.*

### c. The Court's Conclusion

We agree with Munchkin's proposed construction. We do not believe claim differentiation applies because the Claims are not identical in scope. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1238 (Fed. Cir. 2016) (declining to apply claim differentiation where the claims are not identical in scope). Instead, the patentee used the terms interchangeably. The patent repeatedly identifies only a projection that

extends upward. And, given that the "closed lower end" has an upward orientation, no other direction would make sense. In light of the claim language, specification, and embodiments, TOMY's construction simply does not make sense.

Accordingly, we give the term its plain an ordinary meaning, which does not require the projection to extend laterally.

### IV. Term 6: "a support surface provided along an inner surface of the sidewall adjacent to the open upper end"

The final disputed term is "a support surface provided along an inner surface of the sidewall adjacent to the open upper end." The parties disagree as to whether the "inner surface" and the "support surface" are identical. We address their arguments in turn.

#### a. TOMY's Proposed Construction

TOMY argues that this term should be construed as "a support surface formed on the inner surface of the sidewall near the open upper end." Dkt. # 32, at 20. TOMY argues that while the specification uses the terms "inner surface" and "supporting surface" interchangeably, the claims show that the two terms are two different surfaces on the sidewall. *Id.* Further, TOMY says that the specification does not show how the "support surface" is "provided along" the inner surface of the sidewall. *Id*

### b. Munchkin's Proposed Construction

Munchkin argues that this term should be construed as its plain and ordinary meaning. Dkt. # 41, at 24-25. Munchkin cites Figures 8 and 9 of the specification, which show that the "support surface" is a part of the "inner surface." *Id.* at 25. Shown below, Figure 9 uses reference number 21 for the inner surface and reference number 21a for the supporting surface. *Id.*



FIG. 9

### c. The Court's Conclusion

We agree with Munchkin's arguments. Figure 9's description says that the "inner surface 21 extends upward and flares outward . . . and terminates at the rim 26." Dkt. # 34-2, at 5:35–37. The specification then identifies the "supporting surface 21a at the inner collar surface edge of the collar 20 adjacent to the rim 26." *Id.* at 6:8–10. Identifiers "21" and "21a" point to the same line representing the same surface. Thus, the specification shows that the "support surface" is part of the "inner surface." In other

16

words, the "support surface" is the portion of the inner surface that is adjacent to the rim and supports the seal. We therefore construe the disputed term accordingly.

## CONCLUSION

For the reasons stated above, we adopt Munchkin's proposed constructions. It is so ordered.

Dated: 07/20/2021

_____
Charles P. Kocoras
United States District Judge