## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MUNCHKIN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18 C 6337 |
| | ) | |
| TOMY INTERNATIONAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Munchkin, Inc. ("Munchkin") brought this case alleging infringement of U.S. Patent No. 9,888,796 ("'796 Patent") and U.S. Patent Number D744,281 ("'281 Patent") by Defendant TOMY International, Inc. ("TOMY"). Before the Court is Munchkin's Motion for Summary Judgment ("Motion") which seeks judgment on literal infringement of independent claims 1, 5, 9 and 15 of the '796 Patent. Dkt. # 126. For the following reasons, the Motion is granted.

## BACKGROUND

Munchkin filed suit against TOMY on September 17, 2018, alleging TOMY infringed the '796 Patent under 35 U.S.C. § 271(a) (Count I) and the '281 Patent under 35 U.S.C. §§ 271 and 289 (Count II). Dkt. # 1. Both patents relate to non-spill drinking containers. The '796 Patent includes claims directed at a non-spill container having a collar and seal assembly from which drinking can occur anywhere along the collar.

Munchkin has sold its Miracle 360 Cups, a line of children's sippy cups, under the '796 Patent since 2014. Munchkin alleges that TOMY infringed upon the '796 Patent in the design of TOMY's Simply Spoutless Cup ("Accused Product"), which TOMY has sold since 2015. Munchkin seeks summary judgment in its favor on the issue of literal infringement of the '796 Patent.[1] Dkt. # 126.

***Asserted Claims of the '796 Patent***

Munchkin alleges the Accused Product infringes claims 1, 4–6, 8–10, 15, and 19 of the '796 Patent ("Asserted Claims").[2] The Motion seeks judgment on independent claims 1, 5, 9, and 15 ("Independent Claims") only. They read as follows:

> 1. A non-spill collar and seal assembly, comprising: a collar comprising: an open upper end proximate to and including an upper end of a sidewall, an upper perimeter, and a rim; a closed lower end having a projection extending upward therefrom and one or more passages disposed through the closed lower end to channel a fluid; the sidewall having a tapered shape that extends from the open upper end inward toward the closed lower end, and a support surface provided along an inner surface of the sidewall adjacent to the open upper end having one or more protrusions disposed radially adjacent to the support surface defining one or more channels; and a fastener assembly provided on an external wall of the collar; and a seal having a surface substantially similar to a shape of the open upper end, the seal having an aperture for receiving and securing the projection therein.

> 5. A non-spill collar and seal assembly, comprising: a collar comprising: an open upper end; a closed lower end having a projection extending

---

[1] Although styled as a Motion for Summary Judgment, we treat the Motion as one for partial summary judgment. We also note that in January 2020, Munchkin previously moved for partial summary judgment on TOMY's invalidity defenses, arguing TOMY failed to timely disclose them. Dkt. # 37. Later that month, the parties jointly filed a stipulated dismissal with prejudice of TOMY's affirmative defenses of invalidity. Dkt. # 43.

[2] Munchkin dropped claim 7. Dkt. # 138, at 5.

outward therefrom and one or more passages disposed through the closed lower end; an internal wall having a frustoconical shape that extends from the open upper end to the closed lower end, and an inner surface of the internal wall adjacent to the open upper end having one or more protrusions disposed radially defining one or more channels; a fastener assembly provided opposite the internal wall; and a seal having an aperture for receiving and securing the projection therein and a seal perimeter substantially similar to a collar perimeter of the open upper end that creates a leakproof seal with the open upper end of the collar.

9. A non-spill collar and seal assembly, comprising: a collar comprising: an open upper end; a closed lower end having a projection extending outward therefrom and one or more passages disposed through the closed lower end to channel a fluid; an internal wall having a frustoconical shape that extends from the open upper end to the closed lower end, and a support surface provided along an inner surface of the internal wall adjacent to the open upper end having one or more protrusions disposed radially adjacent to the support surface defining one or more channels; and a fastener assembly provided opposite the internal wall; and a seal having an aperture for receiving and securing the projection therein and having a shape substantially similar to an inner surface of the internal wall that creates a leakproof seal with the inner surface of the internal wall.

15. A non-spill collar and seal assembly, comprising: a collar comprising: an open upper end; a closed lower end having one or more passages disposed through the closed lower end to channel a fluid and a projection extending outward from the closed lower end, the projection having at least one shoulder; an internal wall having a frustoconical shape that extends from the open upper end to the closed lower end, and a support surface provided along an inner surface of the internal wall adjacent to the open upper end having one or more protrusions disposed radially adjacent to the support surface defining one or more channels; and a fastener assembly provided opposite the internal wall; and a seal having a surface substantially similar to a shape of the open upper end and having an aperture, the aperture having at least one flange that is engaged and locked to the shoulder on the projection therein.

Dkt. # 1-1, at 13:31–15:16.

*Claim Construction*

After reviewing written submissions and conducting a *Markman* hearing, the Court issued a memorandum opinion construing six disputed claim terms of the '796 Patent on July 20, 2019 ("Claim Construction Order"). Dkt. # 91. The disputed terms were contained in claims 1, 5, 9, and 15 of the '796 Patent. They were "open upper end", "closed lower end", "a projection extending [upward/outward] therefrom", "a support surface provided along an inner surface of the [sidewall/internal wall] adjacent to the open upper end", "a fastener assembly provided on an external wall of the collar", and "a fastener assembly provided opposite the internal wall". Dkt. # 91, at 2–3; Dkt. # 1-1.

Of particular relevance here is the construction of "an open upper end" and "a closed lower end". The parties specifically disputed the meaning of the word "end" in those two phrases. TOMY proposed that "an open upper end" meant "the uppermost, terminal portion of the collar having an opening through the uppermost, terminal portion." *Id.* at 6. It further asserted that "a closed lower end" meant "the lowermost, terminal portion of the collar enclosed such that no opening exists through the lowermost, terminal portion." *Id*. Munchkin, on the other hand, proposed that "an open upper end" and "a closed lower end" should be given their plain and ordinary meaning, which did not require the terms to be the uppermost and lowermost portions of the collar. *Id*. at 7.

We concluded that the claim language and specification of the '796 Patent supported Munchkin's construction of the terms, i.e., the plain and ordinary meaning. *Id*. at 8–9. We ruled that the plain and ordinary meaning of "end" did not support TOMY's construction, and that certain "commonsense examples illustrate[d] the plain meaning well": "The end of a novel is more than just the final period of the final sentence and the end of a movie is more than the final frame. Rather, it is the denouement of the story arc, which may span a few sentences, pages, chapters, or scenes." *Id*. at 9. We explained that "[w]ithout anything in the patent indicating that the 'closed lower end' or 'open upper end' means a specific terminal point, we must read the terms in accordance with their plain and ordinary meaning. The inventor uses the word 'end' to point to an area of the collar, not the uppermost or lowermost terminal point of the collar.'" *Id*. The example embodiments in the specification further supported that conclusion because, e.g., in Figure 18 "both the external walls of the seal and the handles of the collar extend past the closed lower end, and thus the 'closed lower end' is not the lowermost, terminal portion of the collar." *Id*.



Dkt. # 1-1 ('796 Patent, Fig. 18).

Figure 8 supported the Court's conclusion as well. We noted that the specification states: "The *lower end 23* of the collar 20 defines the *lower cylindrical wall* with a smaller diameter *having male threads 24 disposed on an outer surface thereof*." *Id*. at 10 (emphasis in original). So, "[l]ooking at Figure 8, one can clearly see that the male threads are on more than just the lowest terminal point of the wall. Thus, this shows that 'end,' in accordance with its plain meaning, is not the lowermost terminal point, but an area." *Id.*



FIG. 8

Dkt. # 1-1 ('796 Patent, Fig. 8). The Claim Construction Order was clear that "closed lower end" and "open upper end" as used in the '796 Patent have their plain and ordinary meaning and are not required to be the lowermost or uppermost terminal points. Dkt. # 91, at 11.

**Daubert**

On May 24, 2022, the Court granted Munchkin's Motion to Exclude the Expert Opinions and Testimony of Jesse Darley ("*Daubert* Order"), TOMY's infringement

6

expert, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). Dkt. # 132. We ruled that Darley's opinion regarding noninfringement of the '796 Patent must be excluded because it was inconsistent with the Claim Construction Order. "TOMY's expert continue[d] to push the same construction TOMY argued for in its claim construction brief," which was improper. *Id*. at 3–4.

TOMY then moved for reconsideration and clarification of the *Daubert* Order, which the Court granted in part ("Reconsideration Order"). Dkt. # 146. We clarified that the *Daubert* Order granted only the relief sought by Munchkin's Motion to Exclude, i.e., it excluded paragraphs 32–51 and 62–91 of Darley's report. *Id*. at 3–4. We also ruled that, while the aforementioned paragraphs misapplied the Court's construction, "paragraph 75 of Darley's report . . . applied Munchkin's interpretation of the claim construction ruling" and thus need not be excluded. *Id*. at 4–5 (cleaned up).

### *Evidence*

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.[3]

---

[3] Any asserted facts or factual disputes that were not supported by evidence or were immaterial or otherwise inadmissible have not been included.

Munchkin is the assignee and owner of the '796 Patent, a utility patent titled "NON-SPILL DRINKING CONTAINER". Dkt. # 1-1. The '796 Patent summarizes the invention as follows:

> A non-spill container having a collar and seal assembly from which drinking can occur at any location around a rim of the collar and seal assembly. The collar has an open upper end, a closed lower end, and a sidewall. The open upper end is proximate to and includes the upper end of a side wall, an upper perimeter and a rim. The closed lower end has a projection extending upward therefrom and at least one passage disposed through the closed lower end to channel a fluid. The sidewall [of the collar] has a tapered shape that extends from the open upper end inward toward the closed lower end and has a support surface provided along an inner surface adjacent to the open upper end.

*Id*. at 1:53–64.

The '796 Patent includes several embodiments of the claimed invention that featured a closed lower end, including Figures 1, 18, and 21. Each of these embodiments include structures that extend below the closed lower end:



FIG. 1



FIG. 21

*Id*.; *see also supra*, Fig. 18.

In late 2015, TOMY began selling the Accused Product under its "The First Years" brand.

Munchkin's infringement expert, Tim Fletcher, opined that the Accused Product includes a "closed lower end" that has "a projection extending upward therefrom," as well as "one or more passages" disposed through said end to "channel fluid":



9



Dkt. # 128-5, at 29–32, 41–44, 54–57, 66–69. Darley opined that:

> Even if Mr. Fletcher were correct that a POSA would understand that the middle of a collar is the end[], the Accused Products still would not infringe the claims under Mr. Fletcher's interpretation of the closed lower end. Independent claims 1, 5, 9, and 15 further require "one or more passages disposed **through** the closed lower end." I understand the word "through" to mean "moving in one side and out of the other side of".[] However, the structure identified by Mr. Fletcher as a passage exists entirely *within* the area he defined as the closed lower end. In other words, the passages, as defined, do not move in one side of Mr. Fletcher's designated closed lower end and out the other side . . . – the passages begin and end entirely *within* Mr. Fletcher's designated closed lower end. Mr. Fletcher has designated such a large portion of the collar to be the "closed lower end" that the closed lower end, as defined, no longer has passages extending *through* that area. Instead, the passages identified by Mr. Fletcher extend entirely within the supposed closed lower end, which does not meet the requirements of the claim limitation.



Dkt. # 128-2, ¶ 75 (emphasis in original).

Munchkin disputes Darley's cited opinion, stating that Darley admitted that the Accused Product contains "passages" as recited in the '796 Patent. Dkt. # 149-3, at 153:21–154:16. He also confirmed that passage allows fluid to pass through one side and out the other—from the cup to the rim when someone is tipping the cup up to drink and back down again. *Id*. at 155:1–156:1.

When asked what position within the collar meets the plain and ordinary meaning of the word "end", Fletcher responded: "I mean as the court stated it's a point, it's the inventor pointing to a specific position within the collar but not specifically to its terminal end point." Dkt. # 149-4, at 125:10–17. He also testified that the "closed lower end" is "a closed area that is below the open upper end. . . . I believe according to the claim language that the closed lower end is below the open upper end." *Id*. at 125:23–126:13. Fletcher further testified that it is his opinion that "based upon the language of the patent, the closed lower end can be anywhere on the collar as long as it is below the open upper end[.]" *Id*. at 126:14–19. When asked to "[set] aside the court's

11

explanation of what's not included in the definition of the word, end," Fletcher testified that his understanding of the word "end" was "[i]n general in plain and ordinary [meaning] the end is basically anything beyond the center point" and "[t]o me once you get off the point of center you're talking about ends." *Id*. at 126:20–127:19.

Fletcher opined that the term "frustoconical" refers to the shape of a frustum of a cone and is often defined as a truncated cone."  He also opined that the Accused Product includes a "sidewall" or "internal wall" having a "tapered" or "frustoconical" shape that extends from the open upper end to the closed lower end.  Darley did not address this limitation in his report and testified that he did not have opinions regarding the meaning of any disputed claim term besides "closed lower end."

Fletcher opined that the Accused Product includes a fastener assembly provided on an external wall (or opposite the internal wall) of the collar.



Dkt. # 128-5, at 35, 46.  Darley did not address this limitation in his report and testified that he did not have opinions regarding the meaning of any disputed claim term besides "closed lower end."

Fletcher opined that the Accused Product includes a support surface provided along an inner surface of the sidewall or internal wall.



*Id*. at 33, 58. Darley did not address this limitation in his report and testified that he did not have opinions regarding the meaning of any disputed claim term besides "closed lower end."

Fletcher opined that the Accused Product includes an open upper end proximate to and including an upper end of a sidewall, an upper perimeter, and a rim.



*Id*. at 28–29. Darley did not address this limitation in his report and testified that he did not have opinions regarding the meaning of any disputed claim term besides "closed lower end."

13

Rodney Voss, TOMY's Rule 30(b)(6) designee on the factual bases for TOMY's noninfringement contentions, testified that such bases were "the design of our cup" and that "[o]ur cup is our defense." Dkt. # 128-6, at 68:4–17. When asked to elaborate, he stated "I have nothing to share on that." *Id*. at 68:18–73:3. He ultimately referred to TOMY's counsel as the source of his alleged knowledge on the subject, then admitted that he failed to investigate the bases for TOMY's noninfringement contentions and that he had never even seen TOMY's noninfringement contentions before. *Id*. at 74:24–75:16, 76:6–77:4, 98:20–99:6.

Tracy Leacoma was TOMY's Rule 30(b)(6) designee on the design, operation, structure, and function of the Accused Product. When she was asked about the factual bases for TOMY's noninfringement contentions, she testified that the Accused Product does not infringe because the "overall functionality" of TOMY's cups is different; "when you dissect it [it] is different." Dkt. # 128-7, at 181:6–184:8. Leacoma testified that she never reviewed the '796 Patent.

When asked whether there is anything different between the functionality of the Accused Product and Munchkin's Miracle 360 Cup,[4] Leacoma testified that "[t]he functionality is different. They both achieve a similar result. It's allowing a child to practice or maybe learn to drink out of an open cup." Dkt. # 149-1, at 142:18–143:2.

---

[4] The Court notes that throughout its 56.1 statements, TOMY describes Leacoma's testimony as comparing the Accused Product with the '796 Patent. That is incorrect. She was comparing the Accused Product with Munchkin's product—a key difference. TOMY's attempt to mislead the Court as to the cited testimony is not well taken. We remind TOMY's counsel of their duty of candor to the Court and warn that future misstatements will not be tolerated.

She elaborated that the difference between the products is "in the architecture of the plastic. When you look at the lid, it's the way the water comes out, the way it flows is different. The depth of it, . . . the way the gasket goes on is different, so it functions differently." *Id*. at 143:22–144:14. Leacoma also testified that a difference between the Accused Product and Munchkin's Miracle 360 Cup is "the way the silicone valve or silicone gasket goes onto the plastic lid, so they go on differently, but water passes through or passes underneath them, so that's one major difference[.]" *Id*. at 146:19–147:5. Additionally, she stated that the "holes at the base of the reservoir are larger in the [Accused Product], whereas, the Miracle 360 has lots of little holes." *Id*. at 148:1–8.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The

15

nonmovant "must go beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict in [their] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). And "[c]onclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ.*, 811 F.3d 984, 989 (7th Cir. 2016) (cleaned up).

Not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted). In deciding a motion for summary judgment, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The Court cannot weigh conflicting evidence, assess the credibility of witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704–05 (7th Cir. 2011).

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019). The rule requires the moving party to file a statement of facts that demonstrates its entitlement to judgment as a matter of law. *Petty v. City of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014); LR 56.1(a)(2). The nonmoving party must file a response to that statement

and may provide a separate statement of additional facts. *Petty*, 754 F.3d at 420; LR 56.1(b)(2)–(3). Both statements of facts and statements of additional facts must consist of concise numbered paragraphs, supported by citations to specific pages in the evidentiary record. *See* LR 56.1(d)(1)–(2).

If the responding party disagrees with the other party's fact, it must cite specific parts of the record disputing the fact and "concisely explain how the cited material controverts the asserted fact." LR 56.1(e)(3). Failure to properly controvert a fact supported by admissible evidence results in its admission. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); LR 56.1(e)(3). Facts that a party raises in a Local Rule 56.1 response that do not controvert the asserted fact, and that are not included in the party's statement of additional facts, are stricken. The Court also disregards legal arguments in the statement of facts and does not consider statements unsupported by admissible evidence. *See Cady v. Sheahan*, 467 F.3d 1057, 1060–61 (7th Cir. 2006). "The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner[;] it is not intended as a forum for factual or legal argument." *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000).

The Local Rules are not mere technicalities, and district courts are entitled to expect strict compliance with Local Rule 56.1. *See Slabon v. Sanchez*, 2023 WL 3451274, at *2 (7th Cir. 2023).

## DISCUSSION

A company infringes a patent when it "without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor[.]" 35 U.S.C. § 271(a). The first step in an infringement analysis is determining the meaning and scope of the patent claims asserted to be infringed, and the second step is comparing the properly construed claims to the device accused of infringing. *Duncan Parking Techs., Inc. v. IPS Grp. Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016) (citation omitted). The patentee has the burden of proving infringement by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988). Munchkin seeks summary judgment in its favor on literal infringement of the '796 Patent's Independent Claims.[5]

---

[5] We briefly address TOMY's misguided argument that just because the parties *disagree* about infringement, a fact dispute necessarily exists and summary judgment is not appropriate. Dkt. # 147, at 2–5. For example, TOMY points to paragraph 1 and 4 of its Statement of Additional Facts, but neither of those paragraphs are admissible facts because they are legal arguments. *See* Dkt. # 149, ¶ 1 ("The accused device does not meet every claim limitation of the '796 Patent."); *id.* ¶ 4 ("The component identified by Munchkin as the alleged closed lower end does not meet this claim limitation, as construed."). Infringement is a question of fact, and it is an issue amenable to summary judgment "when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *Gart v. Logitech, Inc*., 254 F.3d 1334, 1339 (Fed. Cir. 2001). As with summary judgment in any other case, TOMY must come forward with facts and evidence to defeat summary judgment, not just its disagreement with Munchkin's claims. *See Matsushita*, 475 U.S. at 586 (party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'") (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).

I. **Whether the Accused Product Includes "a closed lower end", a "projection extending [upward/outward] therefrom," and "passages . . . through the closed lower end".**

Each of the Independent Claims recites a "closed lower end" of a collar, the closed lower end also "having a projection extending [upward/outward] therefrom", and "passages disposed through the closed lower end."[6]  Munchkin argues that the Accused Product infringes this limitation and cites Fletcher's expert report.  Munchkin also asserts that "TOMY bases its entire noninfringement position concerning the 'closed lower end' limitation upon an interpretation that is fundamentally inconsistent with the Court's construction."  Dkt. # 127, at 4.  According to Munchkin, TOMY contends the "closed lower end" must include the lowermost, terminal point of the collar, and thus the component Munchkin identifies as the closed lower end (pictured below) cannot be such because it is in the "middle" of the Accused Product's collar.  *Id.* at 4–5.



Munchkin asserts that the Court already rejected this position in the Claim Construction Order, where it disagreed with TOMY that "closed lower end" should be

---

[6] Claim 1 uses "upward" and Claims 5, 9, and 15 use "outward".  The terms are used interchangeably, and the projection need not extend laterally.  Dkt. # 91, at 14–15.

construed to mean "the lowermost, terminal portion of the collar." *Id*. at 5. The Court instead adopted Munchkin's construction and found "closed lower end" should be given its plain and ordinary meaning, which does not require the "closed lower end" to be the lowermost terminal point. *Id*. Rather, the "end" is an area of the collar. Munchkin asserts that because "the parties do not dispute any relevant facts regarding the accused product . . . but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." *Id*. at 7 (quoting *Duncan*, 914 F.3d at 1363).

Munchkin then points to TOMY's assertions that the Accused Product lacks the "projection" limitation because the projection does not extend upward from the closed lower end of the collar and because the projection in the Accused Product is a separate component that allegedly extends from itself. Munchkin contends these assertions are also dependent on TOMY's rejected position regarding the "closed lower end" and are unsupported by expert testimony. According to Munchkin, there is no dispute that the projection in the Accused Product is anchored to the collar and so, by definition, it does not extend from itself.

Additionally, according to Munchkin, TOMY's argument regarding "passages" (that the passages in the Accused Product are disposed through a surface positioned substantially to the exact middle of the collar) is similarly foreclosed by the Court's construction of closed lower end.

20

Munchkin concludes that "[w]ith TOMY's noninfringement argument for all of these limitations foreclosed by the Court's construction of 'closed lower end,' the limitations are easily met by the Accused [Product]." *Id*. at 9.

According to TOMY, Munchkin mischaracterizes TOMY's position as one that hinges entirely on its rejected interpretation of "closed lower end" as the lowermost, terminal point of the collar. TOMY asserts that it does not base its "entire" noninfringement argument on that interpretation; rather, its noninfringement position is that a "closed lower end" cannot exist "anywhere" on the collar, as Munchkin "now unequivocally asserts", and "particularly not where TOMY's component is located." Dkt. # 147, at 7.[7] Because the component accused of being the "closed lower end" is at the center point of the collar, TOMY argues, the Accused Product does not infringe even under Fletcher's broad view of the plain and ordinary meaning of "end".

TOMY also argues that Munchkin has rewritten and broadened the Court's construction to mean "a closed bottom portion of an upward-facing, bowl-like volume within the collar." *Id*. at 5 (quoting Dkt. # 127, at 9). This description, TOMY

---

[7] TOMY also argues that Fletcher, Munchkin's expert, "seems to agree with TOMY that a middle surface cannot be an 'end'". Dkt. # 147, at 7. But the testimony TOMY cites to is irrelevant. TOMY points to Fletcher's deposition transcript when he was asked to *set aside* the Court's construction of "end", which is when he stated that that "the end is basically anything beyond the center point." But only Fletcher's testimony applying the Court's construction is pertinent to the infringement analysis. When discussing the Court's construction and the patent language, Fletcher testified that he "believe[s] according to the claim language that the closed lower end is below the open upper end" and that the "the closed lower end can be anywhere on the collar as long as it is below the open upper end[.]" This testimony is not "inconsistent" as TOMY argues, because one position was under the Court's construction and one was not.

continues, comes from Munchkin's own claim construction brief and is inconsistent with the Claim Construction Order. TOMY states the "Court discussed the plain meaning of the word 'end' by using 'common sense examples' of books and movies to 'illustrate the plain meaning well.'" *Id*. at 6 (quoting Dkt. # 91, at 9). TOMY points to the language of the Claim Construction Order stating that an "end" is "the denouement of the story arc" and that the inventor uses "end" to mean an area of the collar. *Id*. at 4 (quoting Dkt. # 91, at 9). Because Munchkin only argued for infringement under its "invented construction" and not the Court's construction, TOMY asserts, summary judgment is inappropriate. *Id*. at 8.

We disagree that Munchkin attempts to broaden the Court's construction—rather, it is TOMY that seeks to improperly limit it. In the Claim Construction Order, we referred to figures from the '796 Patent to help illustrate our ruling that "the 'closed lower end' is not required to be the lowermost, terminal portion." Dkt. # 91, at 9. Specifically, we noted that Figure 18 shows that "both the external walls of the seal and the handles of the collar extend past the closed lower end, and thus the 'closed lower end' is not the lowermost, terminal point of the collar." *Id*.



*Id.* at 10. Figure 18 is particularly relevant, because the closed lower end appears to be in the middle of the structure. The Claim Construction Order did not foreclose the closed lower end from existing at the middle point of the collar and rather stated that, reading the terms in accordance with their plain and ordinary meaning, the "inventor uses the word 'end' to point to an area of the collar[.]" *Id*. at 9. It is Munchkin's and Fletcher's position that the closed lower end is below the open upper end, which we do not find inconsistent with the Claim Construction Order. And TOMY's argument that the "end" cannot be at the middle is merely a repackaging of its old arguments that the end must be at a specific point, rather than an "area" as the Court ruled.

TOMY argues that "claim scope . . . cannot include the antithesis of its plain meaning" and that "the middle is the antithesis of an 'end.'" Dkt. # 147, at 13–14. It cites *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1316 (Fed. Cir. 2015), and asserts that there, "the Federal Circuit rejected a theory, similar to Munchkin's here, that an 'end' is a 'back half'" and that Munchkin therefore cannot prove infringement as a matter of law. *Id*. But that case is distinguishable at least

because the district court construed the term "proximate end" as "the extreme or last part lengthwise", *Advanced Steel*, 808 F.3d at 1316, in contrast to here where we specifically ruled that "closed lower end" does *not* mean the lowermost, terminal portion and was instead an "area". In ruling that the "closed lower end" was not a specific point, and was an "area of the collar", we left open the possibility that the closed lower end could start at the middle of the collar and, again, referred to figures of the patent where that was the case. We referred to "commonsense examples" and noted the "end of a novel is more than just the final period of the final sentence and the end of a movie is more than the final frame. Rather, it is the denouement of the story arc, which may span a few sentences, pages, chapters, or scenes." Dkt. # 91, at 9. This does not preclude the "closed lower end", as construed, from starting at the middle of the collar.

TOMY also argues that the deposition testimony of its fact witnesses demonstrates a genuine issue of material fact, and specifically points to the testimony of Tracy Leacoma. But as noted above, Leacoma compared the Accused Product to Munchkin's Miracle 360 Cup, and *not* to the '796 Patent.[8] Indeed, she never reviewed the '796 Patent. So, her testimony is irrelevant as to the issue of infringement and does not create a genuine fact dispute. *See Myco Indus., Inc. v. BlephEx, LLC*, 955 F.3d 1, 15 (Fed. Cir. 2020) ("The law is clear [] that 'infringement is determined on the basis of the claims, not on the basis of a comparison with the patentee's commercial

---

[8] TOMY's argument in its response brief, like its assertions of "fact", incorrectly states that Leacoma was testifying about the '796 Patent. We reiterate that this misstatement is entirely improper.

embodiment of the claimed invention.'") (quoting *Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993)). And even if we could credit Leacoma's testimony as to the structure and function of the Accused Product, it is too vague and conclusory to create a fact issue. Specifically, she states that the "functionality", "architecture of the plastic lid", "the way the gasket goes on", "angles inside the lid", and "holes in the reservoir" are "different" without further explanation.

Next, TOMY argues that "[e]ven if the Court were to agree with Munchkin that TOMY is foreclosed from arguing that the middle surface in the [Accused Product] is not a 'closed lower end'", there is still a dispute as to whether "passages" are "disposed through the closed lower end" in the Accused Product. Dkt. # 147, at 10. According to TOMY, Fletcher defined the closed lower end as a "wide area", which is "wider in cross-sectional area than the middle surface of the [Accused Product], [so] the supposed 'passages' identified by Fletcher do not 'move in one side and out the other side of' (*i.e.*, 'through') the alleged closed lower end." *Id*. at 10–11. "Instead, the supposed passages exist *entirely within* the area defined as the closed lower end[,]" TOMY asserts. *Id*. at 11 (emphasis in original).

The relevant images from the experts' respective reports are below. The first is from Fletcher's report, depicting an image of the Accused Product along with Fletcher's annotation in red, including the bracket indicating a portion of the collar and the words "Closed Lower End". The second is from Darley's report, which further annotates

Fletcher's image. Darley added the two red lines extending Fletcher's bracket, as well as the blue writing ("Structure identified as a passage"), arrow, and box.





TOMY argues that Darley's opinion on this point creates a genuine fact dispute. As recounted above, Darley opined that Fletcher "designated such a large portion of the collar to be the 'closed lower end' that the closed lower end, as defined, no longer has passages extending *through* that area. Instead, the passages identified by Fletcher extend entirely within the supposed closed lower end, which does not meet the requirements of the claim limitation." Dkt. # 128-2, ¶ 75 (emphasis in original).

But Darley's opinion is a comment on an annotation of a drawing in Fletcher's report and not an opinion regarding the structure of the Accused Product. And TOMY's characterization of Fletcher's annotated image as denoting a "wide area" is just that—

a characterization—and not a fact that can preclude summary judgment. As Munchkin points out, it is an illogical characterization at that. Dkt. # 155, at 13 ("it makes no sense to conceive of the 'closed lower end' as containing non-structural open space below the closed structure, within which it would not even be possible for 'passages' to exist."). It is clear that Fletcher is referring to the portion of the collar that closes the bowl structure (i.e., what Munchkin has always asserted is the closed lower end) and TOMY's attempt to say otherwise is disingenuous. Fletcher's testimony supports that he does not view the portion of the collar below the bowl to be the "closed lower end". Dkt. # 128-4, at 118:19–23 (describing the area below the bowl as the "open" lower end). And Fletcher's report reflects his opinion that fluid is channeled through one or more passages through the closed lower end.

To be clear, this is not an instance of assessing the weight, admissibility, or credibility of an expert's testimony. Rather, we find Paragraph 75 of Darley's report irrelevant here because it is a mere mischaracterization of an image annotated by Fletcher in his report, and not an opinion regarding the actual structure of the Accused Product or how it works.[9] *See Smith v. Ford Motor Co*., 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be

_____

[9] When the Court ruled that Paragraph 75 of Darley's report was admissible, we ruled solely on the basis of whether it applied TOMY's rejected claim construction, which we found that it did not. Dkt. # 146, at 4–5. We did not make any findings as to its relevance to the infringement analysis.

27

determined by the trier of fact, or where appropriate, on summary judgment . . . . When analyzing the relevance of proposed testimony, the district court must consider whether the testimony will assist the trier of fact with its analysis of any of the issues involved in the case.") (cleaned up). And Darley himself testified that, in the Accused Product, liquid passes through the passages of the collar to go between the rim and the cup. Dkt. # 149-3, at 153:21-156:1.

Summary judgment is the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schact v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). TOMY's claim construction argument is unpersuasive, and TOMY fails to come forward with any evidence from which a reasonable jury could conclude that TOMY does not infringe this limitation of the '796 Patent. Even construing the facts and all reasonable inferences in TOMY's favor—as the Court is required to do here—TOMY has not presented sufficient evidence creating a genuine issue of material fact for trial regarding infringement. *See Matsushita*, 475 U.S. at 586. Consequently, granting Munchkin's motion for summary judgment is appropriate.

## II.     Remaining Claim Limitations

Munchkin asserted in its opening summary judgment brief that the Accused Product infringes certain other limitations of the independent claims of the '796 Patent, including that they have: (1) a "sidewall" or "internal wall" having a "tapered" or "frustoconical" shape that extends from the open upper end to the closed lower end;

28

(2) a fastener assembly provided on an external wall (or opposite the internal wall) of the collar; (3) a support surface provided along an inner surface of the sidewall or internal wall; and (4) an open upper end proximate to and including an upper end of a sidewall, an upper perimeter, and a rim. Munchkin supported each of these arguments with testimony from Fletcher. Because TOMY did not dispute any of these limitations, and only addressed the "closed lower end" limitation, summary judgment is granted in Munchkin's favor.

Munchkin also asserted that, besides the limitations listed above, TOMY does not dispute infringement of the remaining limitations of the Independent Claims. TOMY did not dispute that statement and thus summary judgment is granted in Munchkin's favor on claims 1, 5, 9 and 15 of the '796 Patent.

## **CONCLUSION**

Munchkin's Motion for Summary Judgment [126] as to literal infringement of claims 1, 5, 9, and 15 of the '796 Patent is granted. Status hearing set for 2/27/2024 at 10:20 a.m.

It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Date: January 25, 2024

29